UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FORT LEE OFFICE LLC and MEYER CHETRIT,

              Plaintiffs,

-v.-

COMPUTERSHARE TRUST COMPANY,
NATIONAL ASSOCIATION, *as Trustee for the
benefit of the registered holders of BBCMS
Mortgage Trust 2023-C19, Commercial Mortgage
Pass-Through Certificates, Series 2023-C19,*

              Defendant.

24 Civ. 9979 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

      Plaintiffs Fort Lee Office LLC ("FLO" or the "Borrower") and Meyer Chetrit ("Chetrit" or the "Guarantor") (collectively, "Plaintiffs") bring this action against Computershare Trust Company, N.A. ("CTC," the "Lender," or "Defendant") for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and breach of fiduciary duty, in connection with Defendant's alleged mismanagement of a mixed-used commercial and residential property at 2 Executive Drive in Fort Lee, New Jersey (the "Subject Property"). These claims, however, are closely related to Defendant's ongoing efforts to foreclose on the Subject Property in New Jersey state court (the "Foreclosure Action"). Before the Court is Defendant's motion to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and pursuant to Federal Rule of Civil Procedure 12(b)(1) under the abstention doctrine set forth in *Colorado River Water Conservation District* v. *United States*, 424 U.S. 800,

817-19 (1976). For the reasons that follow, the Court abstains from exercising jurisdiction over this action under *Colorado River* and dismisses it without prejudice.

### BACKGROUND[1]

**A.    Factual Background**

**1.    The Parties**

Plaintiff FLO is a limited liability company organized under the laws of Delaware and has its principal place of business in New York. (Compl. ¶ 10). Plaintiff Chetrit is an individual residing in New York and is a principal of FLO. (*Id.* ¶ 11). Defendant CTC is a national banking association that conducts business in New York and maintains an office there. (*Id.* ¶ 12). CTC is the trustee of BBCMS Mortgage Trust 2023-C19, Commercial Mortgage Pass-

---

[1]    This Opinion draws its facts from the Complaint ("Compl." (Dkt. #1-1)), as well as the Notice of Removal and the exhibits attached thereto ("Notice of Removal, Ex. [ ] (Dkt. #1)). Because "[a] motion to dismiss based on *Colorado River* is considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of [the] Federal Rules of Civil Procedure," *Iacovacci* v. *Monticciolo*, No. 18 Civ. 7984 (JFK), 2019 WL 2074584, at *3 (S.D.N.Y. May 9, 2019) (internal quotation marks omitted), the Court also draws jurisdictional facts from the exhibits attached to the Declaration of Sarah Fehm Stewart ("Stewart Decl., Ex. [ ]" (Dkt. #14)), and the Reply Declaration of Sarah Fehm Stewart ("Stewart Reply Decl., Ex. [ ] (Dkt. #20)). Defendants are permitted to offer extrinsic evidence showing lack of subject matter jurisdiction on a motion brought under Federal Rule of Civil Procedure 12(b)(1). *See Nicholas* v. *Trump*, 433 F. Supp. 3d 581, 584 n.2 (S.D.N.Y. 2020) (citing *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016)). Moreover, the exhibits appended to the Stewart Declarations include filings on the docket of the Foreclosure Action, which filings are public records of which the Court may take judicial notice. *See Mangiafico* v. *Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (explaining that "docket sheets are public records of which" courts may take judicial notice); Fed. R. Evid. 201.

For ease of reference, the Court refers to Defendant's memorandum of law in support of its motion to dismiss as "Def. Br." (Dkt. #13); to Plaintiffs' memorandum of law in opposition to Defendant's motion to dismiss as "Pl. Opp." (Dkt. #18); and to Defendant's memorandum of law in reply as "Def. Reply" (Dkt. #19).

Through Certificates, Series 2023-C19 (the "Trust"), a trust that maintains an office in New York. (*Id.* ¶ 13).

### 2.     The Loan Documents

On March 8, 2023, FLO and Starwood Mortgage Capital LLC (the "Original Lender") entered into a loan agreement (the "Loan Agreement") pursuant to which the Original Lender loaned FLO $54.5 million for the Subject Property (the "Loan"). (Compl. ¶ 25; Stewart Decl., Ex. 2). Plaintiffs also invested more than $40 million of their own capital to purchase and improve the Subject Property. (Compl. ¶ 27). The Subject Property is a commercial mixed-use building containing commercial and residential units, as well as a parking garage. (*Id.* ¶¶ 20-24). After the Original Lender assigned the Loan to an interim lender, who assigned it to another interim lender, the Loan and all related documents were assigned to CTC on April 27, 2023. (*Id.* ¶¶ 60-62). Plaintiff Chetrit guaranteed the Loan pursuant to the Guaranty of Recourse Obligations (Unsecured) (the "Guaranty"). (*See* Notice of Removal, Ex. B).

Under the terms of the Loan Agreement, FLO must pay the Lender interest accruing on the outstanding principal plus certain amounts to fund escrow and reserve accounts on a monthly basis. (Compl. ¶ 29). The Loan Agreement provides that an "Event of Default" occurs if FLO does not pay any principal, interest, or other sums due under the Loan by the due date. (*Id.* ¶ 30; *see* Stewart Decl., Ex. 2 § 8.1). The Lender may accelerate the Loan if an Event of Default occurs. (Compl. ¶ 32). And FLO is required to make certain

3

repairs and maintain certain conditions of the Subject Property.  (*Id.* ¶¶ 33-39).

Under the Loan Agreement, FLO must pay for the costs of all repairs stemming

from damages caused by fire or another casualty, and FLO must not incur or

assume any lien against the Subject Property (with certain exceptions).  (*Id.*

¶¶ 40-43).  Pursuant to Section 2.7.2 of the Loan Agreement, CTC must

establish and maintain a Cash Management Account, and pursuant to the

Loan Agreement's "Waterfall" provision (Section 2.7.2(b)), funds must be

disbursed from the Cash Management Account for certain expenses unless an

Event of Default occurs.  (*Id.* ¶¶ 83-98; Stewart Decl., Ex. 2 § 2.7.2).  After an

Event of Default occurs and while it is occurring, CTC has discretion to

distribute funds in any order and priority until the mortgage has been paid in

full.  (Compl. ¶ 99; Stewart Decl., Ex. 2 § 2.7.2(d)).

On March 8, 2023, FLO executed a promissory note in favor of the

Lender for the original principal amount of $54.5 million.  (Compl. ¶ 44;

Stewart Decl., Ex. 3).  On March 8, 2023, FLO also executed a "Mortgage,

Assignment of Leases and Rents and Security Agreement" in favor of the

Lender (the "Security Instrument"), granting the Lender a mortgage lien on the

Subject Property.  (Compl. ¶¶ 46, 48; Stewart Decl., Ex. 4).  According to the

terms of the Security Instrument, when an Event of Default occurs and while it

is occurring, the Lender may accelerate the Loan, initiate foreclosure

proceedings on the Subject Property, and seek appointment of a receiver for the

Subject Property.  (Compl. ¶¶ 49-52).

Also on March 8, 2023, the Original Lender executed an assignment of leases and rents agreement (the "ALR") pursuant to which the Lender became the landlord for the Subject Property and was granted a revocable license to collect, receive, and use rents from the Subject Property and act as the landlord under its leases. (Compl. ¶ 57; Stewart Decl., Ex. 5). While an Event of Default is occurring, the license granting FLO the rights to leases and rents for the Subject Property is automatically revoked. (Compl. ¶ 58).

Collectively, the Court refers to the Loan Agreement, the Security Instrument, and the ALR as the "Loan Documents." The Loan Documents are governed by New York law and contain a fee-shifting provision. (Stewart Decl., Ex. 2 §§ 10.3(a), 10.13).

### 3. The Foreclosure Action

On May 23, 2024, Defendant initiated the Foreclosure Action against FLO, Chetrit, and other entities that held construction liens against or other interests in the Subject Property, in New Jersey Superior Court in Bergen County. (Compl. ¶¶ 179-182; Stewart Decl., Ex. 7 ¶¶ 2-11). This action is captioned *Computershare Trust Company, National Association* v. *Fort Lee Office, LLC*, No. SWC-F-5623-2024 (N.J. Super. Ct. Ch. Div. 2024). (Compl. ¶ 180; *see* Stewart Decl., Ex. 7).

In the Foreclosure Action, CTC has alleged that it issued ten default notices to FLO (Stewart Decl., Ex. 7 ¶¶ 66-68) regarding (i) FLO's failure to make certain monthly payments (*id.* ¶¶ 74-79); (ii) construction liens recorded against the property (*id.* ¶¶ 80-88); (iii) FLO's failure to make required repairs

(*id.* ¶¶ 89-94); and (iv) FLO's failure to satisfy certain conditions (*id.* ¶¶ 95-100), all of which constituted Events of Default.  Additionally, CTC later became aware of FLO's failure to pay for certain utility services.  (*Id.* ¶¶ 66, 69-73).  CTC has further alleged that certain other conduct supports its contention that FLO breached the Loan Documents, including the bringing of a civil action in New Jersey Superior Court, Essex County, by a commercial tenant regarding maintenance issues (*id.* ¶¶ 101-104); the bringing of a civil action in New Jersey Superior Court, Bergen County, by a real estate broker regarding unpaid brokerage fees (*id.* ¶¶ 105-109); and the closure of the Subject Property's parking garage by the Borough of Fort Lee (*id.* ¶¶ 110-114).  According to the allegations in the Foreclosure Action complaint, as of May 10, 2024, the outstanding debt due and owing by FLO was more than $62 million.  (*Id.* ¶ 118).  CTC sought foreclosure and possession of the Subject Property, a right to collect rents, and the appointment of a rent receiver.  (*Id.* ¶¶ 121-147).

On July 12, 2024, the New Jersey court overseeing the Foreclosure Action entered a receivership order appointing a receiver for the Subject Property and granting the receiver immediate possession and control of the Subject Property, as well as the authority to operate and manage it.  (Stewart Decl., Ex. 8).  After FLO and Chetrit failed to timely answer the Foreclosure Action complaint following service of the complaint and of the New Jersey court's order to show cause, on July 24, 2024, CTC moved for entry of default against both FLO and Chetrit.  (*Id.*, Ex. 9-10).  The New Jersey court entered default against both FLO and Chetrit that same day.  (*See id.*, Ex. 11 at 2).

6

FLO and Chetrit moved to vacate the entries of default against them on September 4, 2024, but the New Jersey court denied their motion on November 18, 2024.  (*Id.* at 2-5).

### 4.    The Instant Action

One week later, on November 25, 2024, Plaintiffs initiated the instant action by filing the Complaint in New York County Supreme Court.  (*See* Compl.).  Defendant timely removed the action to this Court on December 27, 2024.  (*See* Notice of Removal).

In the Complaint, Plaintiff alleges that Defendant is engaged in an ongoing scheme to manufacture Events of Default so that it can foreclose on the Subject Property and reap financial benefits.  (*See* Compl. ¶¶ 110-182). Among many allegations, Plaintiffs allege that neither CTC nor their predecessor lenders paid FLO hundreds of thousands of dollars as required under the Loan Agreement following closing, causing contractors to file mechanic's liens.  (*Id.* ¶¶ 64-67).  Additionally, Plaintiffs allege that, since January 23, 2024, they have been denied access to a portal and servicing information for the Loan and the Subject Property, preventing them from paying monthly bills and reviewing rental income and other financial information.  (*Id.* ¶¶ 74, 81-82).  Plaintiffs allege that monthly rents collected by CTC on the Subject Property exceeded Plaintiffs' loan obligations and maintenance costs, though CTC has claimed that there was an $80,419 shortfall in November 2023 and a monthly shortfall since January 2024.  (*Id.* ¶¶ 104-105, 108).  Indeed, Plaintiffs attribute this shortfall to CTC's

mismanagement of the Cash Management Account and the Subject Property. (*Id.* ¶ 109).

Plaintiffs allege that, between August 2023 and May 2024, Defendant issued ten default notices to Plaintiffs that were, in fact, improper and intended to manufacture Events of Default so that Defendant could enrich itself and foreclose on the Subject Property. (Compl. ¶¶ 110-121, 123-125). These allegedly improper notices purported to notify Plaintiffs of defaults related to failures to provide guarantor financial statements and other financial reporting; to cure mechanic's liens; to perform repairs; to cure code violations; and to satisfy post-closing requirements. (*Id.* ¶ 122). Furthermore, Plaintiffs allege that, after a fire occurred at the Subject Property in April 2023, Plaintiffs paid for approximately 10% of the cost of the repairs and requested (but did not receive) the insurance proceeds from Defendant, which had disbursed a portion of the proceeds to someone pretending to be Plaintiffs and withheld the rest. (*Id.* ¶¶ 141-155). Along similar lines, Plaintiffs allege that Defendant improperly withdrew a higher monthly insurance constant amount from the Cash Management Account, and when Plaintiffs notified Defendant of this, Defendant improperly applied the overage amount to the outstanding Loan interest rather than to operating expenses. (*Id.* ¶¶ 156-169).

On September 6, 2023, Defendant declared for the first time that an Event of Default had occurred under the Loan Agreement. (Compl. ¶ 126). This declaration triggered the automatic revocation of FLO's license permitting it to collect, receive, and use rents from the Subject Property and to act as the

landlord under its leases. (*Id.* ¶ 128). It also allowed Defendant to apply the default interest rate to the Loan. (*Id.* ¶ 127). According to Plaintiffs, by collecting rent and managing the finances and accounts for the Subject Property, Defendant effectively took control of FLO's business. (*Id.* ¶¶ 170-178).

In connection with these allegations, Plaintiffs bring claims for breach of contract (Count I); breach of the implied covenant of good faith and fair dealing (Count II); unjust enrichment (Count III); and breach of fiduciary duty (Count IV). (Compl. ¶¶ 183-209).[2]

## B.    Procedural Background

As noted, Plaintiffs initiated this action by filing a summons and verified complaint in New York County Supreme Court on November 25, 2024. (Dkt. #1-1). Defendant timely removed the action to this Court on December 27, 2024, on the basis of diversity jurisdiction. (Dkt. #1). Soon thereafter, on January 3, 2025, Defendant filed a pre-motion letter regarding its anticipated motion to dismiss the Complaint. (Dkt. #5). Having received no response from Plaintiffs within three business days, on January 10, 2025, the Court scheduled a pre-motion conference for January 23, 2025. (Dkt. #7). On January 15, 2025, Plaintiffs filed a letter opposing Defendant's anticipated motion to dismiss. (Dkt. #9).

---

[2]    In their opposition brief, Plaintiffs appear to withdraw their breach of contract and breach of implied covenant of good faith and fair dealing claims (Counts I and II) as to Plaintiff Chetrit. (Pl. Opp. 15-16; *see also* Def. Reply 5).

The Court held a pre-motion conference on January 23, 2025, during which it set a briefing schedule for Defendant's motion to dismiss. (January 23, 2025 Minute Entry).  On February 20, 2025, Defendant requested a short adjournment of the briefing schedule.  (Dkt. #10).  The Court granted this request on February 21, 2025.  (Dkt. #11).

On February 26, 2025, Defendant filed its motion to dismiss (Dkt. #12), a memorandum of law in support thereof (Dkt. #13), and the Declaration of Sarah Fehm Stewart (Dkt. #14).  On April 1, 2025, Plaintiffs requested a one-week adjournment of the briefing schedule.  (Dkt. #15).  That same day, the Court granted this request.  (Dkt. #16).  On April 9, 2025, Plaintiffs filed their memorandum of law in opposition to the motion to dismiss.  (Dkt. #18).  On April 24, 2025, Defendant filed its reply memorandum of law (Dkt. #19), as well as the Reply Declaration of Sarah Fehm Stewart (Dkt. #20).

## DISCUSSION

### A.    Applicable Law

#### 1.    Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant can move to dismiss a complaint for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "A 'case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'"  *Nike, Inc.* v. *Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

Challenges to subject matter jurisdiction under Rule 12(b)(1) can be either facial or fact-based. *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *see also Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). A facial Rule 12(b)(1) motion is one "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Carter*, 822 F.3d at 56. A plaintiff opposing such a motion bears "no evidentiary burden," *id.*, and the court's task is to determine whether the complaint and its exhibits allege facts that "affirmatively and plausibly suggest" that the plaintiff has standing to sue, *id.* (internal quotation marks omitted) (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). In making that determination, the court must accept the complaint's allegations as true "and draw[ ] all reasonable inferences in favor of the plaintiff." *Id.* at 57 (internal quotation marks omitted) (quoting *Lunney* v. *United States*, 319 F.3d 550, 554 (2d Cir. 2003)).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." *Carter*, 822 F.3d at 57; *see also MMA Consultants 1, Inc.* v. *Republic of Peru*, 719 F. App'x 47, 49 (2d Cir. 2017) (summary order) (defining a fact-based Rule 12(b)(1) motion as one where "the defendant puts forward evidence to challenge the factual contentions underlying the plaintiff's assertion of subject-matter jurisdiction"). "In opposition to such a motion, [the plaintiff] must come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in the[ir p]leading if the

11

evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show [subject matter jurisdiction]." *Katz*, 872 F.3d at 119 (second alteration in original) (internal quotation marks omitted). If a defendant supports its fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a "district court will need to make findings of fact in aid of its decision as to" subject matter jurisdiction. *Carter*, 822 F.3d at 57.

### 2. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), a court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is entitled to relief if she alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" (quoting *Twombly*, 550 U.S. at 570)).

That said, a court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted and alteration adopted) (quoting *Iqbal*, 556 U.S. at 678)). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

On a motion to dismiss pursuant to Rule 12(b)(6), "the Court may consider any written instrument attached to the [c]omplaint as an exhibit, any statements or documents incorporated by reference in the [c]omplaint, documents that are 'integral' to the [c]omplaint even if they are not incorporated by reference, and matters of which judicial notice may be taken." *Donoghue* v. *Gad*, No. 21 Civ. 7182 (KPF), 2022 WL 3156181, at *2 (S.D.N.Y. Aug. 8, 2022) (citing *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)).

## B.    Analysis

Defendant seeks to dismiss the Complaint under the *Colorado River* abstention doctrine (*see* Def. Br. 19-23; Def. Reply 1-4), as well as for failure to

state a claim upon which relief can be granted under Rule 12(b)(6) (*see* Def.

Br. 8-19; Def. Reply 4-10). "A motion to dismiss based on [the] *Colorado River*

[abstention doctrine] is considered as a motion to dismiss for lack of subject

matter jurisdiction pursuant to Rule 12(b)(1)[.]" *Iacovacci* v. *Monticciolo*, No. 18

Civ. 7984 (JFK), 2019 WL 2074584, at *3 (S.D.N.Y. May 9, 2019) (internal

quotation marks omitted). Where, as here, a defendant moves to dismiss a

pleading both under Rule 12(b)(1) and under Rule 12(b)(6), a court should

consider the Rule 12(b)(1) challenge first. *Rhulen Agency, Inc.* v. *Ala. Ins. Guar.*

*Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990); *see also Daly* v. *Citigroup Inc.*, 939

F.3d 415, 426 (2d Cir. 2019). Because the Court decides to abstain under

*Colorado River*, it does not reach Defendant's arguments for dismissal under

Rule 12(b)(6).

### 1. The Court Abstains from Exercising Jurisdiction Under *Colorado River*

The Supreme Court in *Colorado River Water Conservation District* v.

*United States* held that it may be appropriate for federal courts to abstain from

exercising jurisdiction when there is parallel state-court litigation. 424 U.S.

800, 817-19 (1976); *accord Niagara Mohawk Power Corp.* v. *Hudson River-Black*

*River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012). This doctrine derives

from "considerations of wise judicial administration, giving regard to

conservation of judicial resources and comprehensive disposition of litigation."

*Colo. River*, 424 U.S. at 817 (internal quotation marks omitted and alteration

adopted). Although the general rule is that the pendency of a state court action

is no bar to a federal court exercising jurisdiction in a proceeding concerning

the same matter, and federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given them," there are nonetheless "limited" and "exceptional" circumstances permitting dismissal of a federal action due a concurrent proceeding in state court.  *Id.* at 817-18.

In determining whether to abstain under *Colorado River*, courts engage in a two-step inquiry.  *First*, as a "necessary prerequisite to abstention," the court must determine that the state and federal proceedings are "parallel."  *Dittmer* v. *County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998).  Actions are considered parallel "when substantially the same parties are contemporaneously litigating substantially the same issue in another forum."  *Niagara Mohawk*, 673 F.3d at 100 (quoting *Dittmer*, 146 F.3d at 118).  *Second*, "[i]n evaluating whether *Colorado River* abstention is appropriate, federal district courts [must] consider six factors, 'with the balance heavily weighted in favor of the exercise of jurisdiction.'"  *Id.* (quoting *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).  These factors include:

> [i] whether the controversy involves a *res* over which one of the courts has assumed jurisdiction; [ii] whether the federal forum is less inconvenient than the other for the parties; [iii] whether staying or dismissing the federal action will avoid piecemeal litigation; [iv] the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; [v] whether federal law provides the rule of decision; and [vi] whether the state procedures are adequate to protect the plaintiff's federal rights.

*Id.* at 100-01 (italicization added) (quoting *Woodford* v. *Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001)).  "None of these factors

alone is 'necessarily determinative.'" *Mochary* v. *Bergstein*, 42 F.4th 80, 85 (2d Cir. 2022) (quoting *Colo. River*, 424 U.S. at 818-19).

Here, the Court finds that the instant action and the Foreclosure Action are parallel, and that five of the six factors — plus one additional factor — favor abstaining from exercising jurisdiction.

### a.    The Actions Are Parallel

The instant action and the Foreclosure Action are parallel because they involve substantially the same parties litigating substantially the same issue. *See Niagara Mohawk*, 673 F.3d at 100.

To begin, the parties are substantially the same.  "Complete identity of parties … is not required[.]" *Iacovacci* v. *Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 375 (S.D.N.Y. 2020) (quoting *GBA Contracting Corp.* v. *Fid. & Deposit Co. of Md.*, No. 00 Civ. 1333 (SHS), 2001 WL 11060, at *1 (S.D.N.Y. Jan. 4, 2001)); *see also Shields* v. *Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012).  FLO and Chetrit are the plaintiffs in this action, and they are the two primary defendants in the Foreclosure Action.  (Stewart Decl., Ex. 7.)  CTC is the sole defendant in this action, and it is the sole plaintiff in the Foreclosure Action. (*Id*.).  FLO and Chetrit together opposed the appointment of a rent receiver (Stewart Reply Decl., Ex. A); moved to vacate the entry of default (*see id.*, Ex. B); and moved to reconsider the appointment of a rent receiver (*id.*, Ex. C) in the Foreclosure Action.

The parties in this action and the Foreclosure Action are also litigating substantially the same issue: the propriety of the foreclosure of the Subject

16

Property.  This prong of the parallelism analysis presents a closer question.
Plaintiffs assert claims in this action that they have not specifically asserted in
the Foreclosure Action, and they seek different forms of relief.  In particular,
Plaintiffs assert claims for breach of contract, breach of the implied covenant of
good faith and fair dealing, unjust enrichment, and breach of fiduciary duty,
and they seek a mix of monetary and injunctive relief in connection with these
claims.  (*See* Compl. ¶¶ 183-209).

The Second Circuit has suggested that two actions are less likely to be
parallel under *Colorado River* if they feature parties raising different causes of
actions and claiming different types of relief.  For example, in *Mochary* v.
*Bergstein*, the Second Circuit reversed a decision to abstain under *Colorado
River* where "[t]he issues and relief sought [were] distinct: the state action
involve[d] domestic relations concerns as well as identification and distribution
of marital property," whereas the federal action raised "tort claims against only
[one defendant] seeking replevin of [the property at issue] and monetary
damages for conversion and civil theft."  42 F.4th at 86.  Similarly, in
*Sheerbonnet, Ltd.* v. *American Express Bank Ltd.*, the Second Circuit
determined that actions were not concurrent partly because "the proceedings
involve[d] different subject matters and different forms of relief."  17 F.3d 46,
50 (2d Cir. 1994).  Specifically, in *Sheerbonnet*, the federal action raised tort
claims while the state court action raised claims regarding a creditor's
entitlement to certain assets.  *Id.* (citing *All. of Am. Insurers* v. *Cuomo*, 854 F.2d
591, 603 (2d Cir. 1988) (finding it was "not at all clear that this case and the

state court actions [were] 'concurrent'" where "[t]he federal case raises federal constitutional questions," while the state cases involved "the adequacy of rates and the status of the monies in [a f]und")).

Along these lines, one court in this District recently determined that a state foreclosure action that sought possession of the property at issue was not parallel to a federal action that sought a mix of monetary damages, declaratory relief, and injunctive relief. *Bocci* v. *Nationstar Mortg. LLC*, No. 23 Civ. 1780 (JPC) (KHP), 2025 WL 2467024, at *8 (S.D.N.Y. Aug. 8, 2025). In *Bocci*, the court reasoned that it was "unlikely that the state litigation would dispose of all the claims presented in the federal case because ... the claims and relief sought differ." *Id.* (internal quotation marks omitted). This conclusion accords with the Second Circuit's admonition in *Mochary* that "[m]ere 'commonality in subject matter' does not render actions parallel." 42 F.4th at 86 (quoting *Dittmer*, 146 F.3d at 118). And it accords with the determinations of some other courts in this Circuit. *See, e.g.*, *Renois* v. *WVMF Funding, LLC*, No. 20 Civ. 9281 (LTS), 2024 WL 1313492, at *6 (S.D.N.Y. Mar. 27, 2024) ("[T]hough the two actions clearly overlap in that they both relate to the [l]oan, there is no indication or allegation that the State Foreclosure action considered any of the issues raised here — namely, whether [the defendant's] actions in sub-servicing the loan violated various provisions of state and federal law."); *Urquizo* v. *Cmty. Loan Servicing LLC*, No. 24 Civ. 909 (NCM) (JAM), 2025 WL 1093073, at *5 (E.D.N.Y. Apr. 11, 2025) ("[T]he Court is not persuaded that the foreclosure action necessarily requires the state court to determine whether the Agreement

was enforceable in order to determine whether [the plaintiff] has defaulted on the … loan."); *cf. Sitgraves* v. *Fed. Home Loan Mortg. Corp.*, 265 F. Supp. 3d 411, 412-13 (S.D.N.Y. 2017) (finding parallelism where the plaintiff brought damages claims for fraud, breach of the duty of good faith and fair dealing, and violations of New York's Deceptive Practices Act in *both* the federal action and as counterclaims in the state foreclosure action).

At the same time, to find parallelism under *Colorado River,* "[p]erfect symmetry of parties and issues is not required. Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Abe* v. *N.Y. Univ.*, No. 14 Civ. 9323 (RJS), 2016 WL 1275661, at *6 (S.D.N.Y. Mar. 30, 2016) (quoting *Shields*, 891 F. Supp. 2d at 577). Thus, "[e]ven if different relief is sought in the two actions, or the claims are not exactly the same, they are parallel as long as the causes of action are comprised of the same essential issues." *Wells Fargo Bank, N.A.* v. *Silberberg*, No. 23 Civ. 2811 (JGLC), 2024 WL 36006, at *3 (S.D.N.Y. Jan. 3, 2024) (quoting *Tuebor Reit Sub LLC* v. *Paul*, No. 19 Civ. 8540 (JPO), 2020 WL 4897137, at *5 (S.D.N.Y. Aug. 19, 2020) (quoting *Garcia* v. *Tamir*, No. 99 Civ. 298 (LAP), 1999 WL 587902, at *3 (S.D.N.Y. Aug. 4, 1999) (citing *Gen. Reinsurance Corp.* v. *Ciba-Geigy Corp.*, 853 F.2d 78, 81 (2d Cir. 1988)))).

In accordance with this principle, courts in this Circuit have found federal actions to be parallel to state-court actions — including foreclosure actions — though the claims brought in each were not identical. *See, e.g., Phillips* v. *Citibank, N.A.*, 252 F. Supp. 3d 289, 295-97 (S.D.N.Y. 2017) (finding

19

federal action asserting a host of claims related to administration of a trust to be parallel to state surrogate's court action because "the introduction of theories of recovery in this Court … would necessarily interfere with the Surrogate's Court proceedings"); *Krondes* v. *Nationstar Mortg., LLC*, No. 17 Civ. 4974 (WHP), 2018 WL 2943774, at *3 (S.D.N.Y. June 12, 2018) ("*Krondes I*") (finding federal action seeking damages and injunctive and declaratory relief invalidating a state foreclosure proceeding was parallel to that state action because, although the plaintiff asserted federal claims, the actions were essentially the same, as plaintiff "claim[ed] that his mortgage and its subsequent assignments are invalid"), *aff'd*, 789 F. App'x 913 (2d Cir. 2020) (summary order) ("*Krondes II*"); *Tuebor Reit*, 2020 WL 4897137, at *5 ("The instant action and the Texas state court action are parallel because in both actions [the lender] is seeking recovery as a result of [the guarantor's] breaches under the loan and guaranty."); *Windward Bora, LLC* v. *Bank of N.Y. Mellon*, No. 19 Civ. 858 (RPK) (RML), 2020 WL 7042761, at *3-4 (E.D.N.Y. Nov. 30, 2020) (finding federal quiet title action was parallel to state foreclosure action despite the different forms of relief sought because "both actions concern substantially the same issue: the enforceability of defendant's mortgage," in part because "adjudicating plaintiff's quiet title claim would require making a determination as to whether the state trial court erred in denying defendant's motion to vacate the dismissal of that foreclosure"); *Sander* v. *JP Morgan Chase Bank, N.A.*, No. 22 Civ. 1543 (VB), 2023 WL 1866887, at *6 (S.D.N.Y. Feb. 9, 2023) (finding federal action seeking damages and injunctive relief was parallel

20

to state foreclosure action because "[t]he issues are also essentially the same: both actions turn on the validity of [the lender]'s interest in the [p]roperty and the propriety of [the lender]'s conduct in pursuing the [f]oreclosure [a]ction"); *JPMorgan Chase Bank, N.A.* v. *Avara US Holdings LLC*, No. 23 Civ. 7145 (JGK), 2024 WL 709068, at *5-6 (S.D.N.Y. Feb. 21, 2024) (finding that actions were parallel where both centered on the same loan agreement and whether either party breached its obligations under that agreement, even though plaintiff sought a declaratory judgment in the federal case and foreclosure of and/or appointment of a receiver over a property in the state case); *Silberberg*, 2024 WL 36006, at *3 ("Although the forms of relief sought by Plaintiff in this case and the state action are not identical, the recovery in both actions stems from [the b]orrower's alleged breaches of the [l]oan [a]greement."); *Adam Pl0tch LLC* v. *U.S. Bank Nat'l Ass'n*, No. 21 Civ. 6137 (ENV) (JAM), 2024 WL 4977003, at *4 & n.5 (E.D.N.Y. Oct. 17, 2024) (finding parallelism where, "as a practical matter, it would be impossible for this Court to grant plaintiff the relief it seeks — canceling and discharging [the lender]'s mortgage — without simultaneously passing on the merits of [the lender]'s pending foreclosure action"); *Zulli* v. *JP Morgan Chase Bank*, No. 23 Civ. 3519 (JMA) (AYS), 2025 WL 2482300, at *7 (E.D.N.Y. Aug. 27, 2025) (finding parallelism because plaintiff's claims of fraud by the lender in commencing and maintaining a state foreclosure action were "substantially identical to the defenses raised by [plaintiff] in the numerous motions to dismiss he made in the Foreclosure Action").

21

Additionally, the Second Circuit has upheld decisions to abstain from exercising jurisdiction under *Colorado River* in similar circumstances. For example, in *U.S. Bank National Association* v. *East Fordham DE LLC*, the Second Circuit found that "the district court correctly determined that the two proceedings were parallel, given that both actions are centered on the same parties' Loan Modification Agreement and whether either party breached its obligations under that agreement." 804 F. App'x 106, 107 (2d Cir. 2020) (summary order). Likewise, in *Krondes II*, the Second Circuit found that the district court did not abuse its discretion in finding that two actions were parallel where "[t]he key issues in [the plaintiff's] federal action, including the validity of the allegedly fraudulent mortgage and Appellees' conduct in enforcing the mortgage, are squarely at issue in the state court foreclosure proceedings … *even though [the plaintiff's] complaint raises [distinct] federal claims*." 789 F. App'x at 914 (emphasis added).

Here, the Court finds that the parties are litigating substantially the same issues in this action and the Foreclosure Action for two distinct but related reasons: (i) Plaintiffs can raise or have already raised the same issues in the Foreclosure Action, with which the Court will not interfere; and (ii) both actions turn on the issue of the propriety of the foreclosure of the Subject Property.

*First*, by adjudicating Plaintiffs' claims in this action, the Court would be deciding issues that the New Jersey court has already decided or may decide. On July 12, 2024, the New Jersey court appointed a rent receiver for the

Subject Property; enjoined FLO from collecting rents or other proceeds from the property; and ordered that the receiver take possession and control of the property. (Stewart Decl., Ex. 8 at 1-2). On July 24, 2024, Defendant moved for entry of default against both FLO and Chetrit because neither had responded to the foreclosure complaint within the required timeframe. (*Id.*, Ex. 9, 10). After the New Jersey court defaulted FLO and Chetrit, it denied their motion to vacate entry of default and extend the time to answer. (*See id.*, Ex. 11).

In this action, Plaintiffs are seeking relief that would be inconsistent both with the New Jersey court's appointment of a rent receiver to take possession and control of the Subject Property, and with the New Jersey court's entry of default against FLO and Chetrit. In particular, Plaintiffs are seeking control over the Subject Property; a finding that Defendant's material breach excuses FLO's nonperformance; and a finding that the very maintenance of the Foreclosure Action amounts to breaches of the implied covenant of good faith and fair dealing and of a fiduciary duty.

In connection with their unjust enrichment claim (Count III), Plaintiffs allege that, "[b]ecause Plaintiffs' performance under the Loan documents is excused by Defendant's material breach of the Loan Agreement, *Plaintiffs have legal ownership over the Subject Property and an immediate right to possession.*" (Compl. ¶ 197 (emphasis added)). Plaintiffs characterize Defendant's initiation of the foreclosure proceedings as an effort to "unjustly obtain ownership rights to and possession of the Subject Property." (*Id.* ¶ 198). They allege that "[i]t defies equity and good conscience to permit Defendant to retain control over

the subject property" (*id.* ¶ 201), and they seek "equitable relief" as a result of "Defendant's unjust enrichment" (*id.* ¶ 204).

Relatedly, in connection with their breach of contract claim (Count I), Plaintiffs allege that "[a]ny nonperformance by FLO is excused by CTC's material breach of the agreements." (Compl. ¶ 186). Furthermore, the very "fil[ing of] of a foreclosure action" forms part of their claim for breach of the implied covenant of good faith and fair dealing (Count II). (*Id.* ¶ 192). And, as part of their claim for breach of fiduciary duty (Count IV), Plaintiffs allege that Defendant "breached its fiduciary duties by ... [f]iling a foreclosure action." (*Id.* ¶ 208(f)).

Resolution of the Foreclosure Action would resolve Plaintiffs' claims insofar as they seek ownership of the Subject Property. *See Adam Pl0tch LLC*, 2024 WL 4977003, at *4 ("[A]s a practical matter, it would be impossible for this Court to grant plaintiff the relief it seeks ... without simultaneously passing on the merits of [a] pending foreclosure action."). Awarding Plaintiffs such relief would directly contradict the determinations of the New Jersey court in the ongoing Foreclosure Action. *See Zulli*, 2025 WL 2482300, at *7 ("[T]he instant Complaint's request for declaratory and injunctive relief dismissing the Foreclosure Action and canceling and discharging the underlying mortgage further demonstrates the parallel nature of the two actions." (citing *Krondes I*, 2018 WL 2943774, at *3; *Phillips*, 252 F. Supp. 3d at 296)).

Moreover, a finding that FLO's nonperformance is excused by CTC's material breach of the Loan Agreements — which would be key to Plaintiffs'

24

breach of contract claim — would undermine the New Jersey court's entry of default on the foreclosure issue. *See Phillips*, 252 F. Supp. 3d at 296-97 ("[T]he introduction of theories of recovery in this Court that would necessarily interfere with the [state court's] proceedings demonstrates exactly why the two actions should not proceed contemporaneously."); *Avara US Holdings LLC*, 2024 WL 709068, at *5 ("Both this Court and the [state] court will be asked to determine, among other things, whether a default occurred, whether [one party] breached the Agreement, whether [the other party] breached the Agreement, and any amounts due under the Agreement." (internal quotation marks omitted)).

With respect to the latter point, Plaintiffs argue that, in fact, "resolution of the Foreclosure Action will not dispose of the claims in the instant action," inasmuch as "the New Jersey [court] declined to adjudicate the merits of the claims at issue here because under New Jersey law they are not defenses to foreclosure." (Pl. Opp. 9-10 (citing Stewart Decl., Ex. 11 at 2-3)). According to Plaintiffs, it follows that abstention "would not preserve judicial resources because Plaintiffs would be forced to file yet another action in New York Supreme Court to pursue recovery on their claims." (*Id.* at 10).

But, as previously discussed, resolution of the Foreclosure Action would dispose of Plaintiffs' claims insofar as they seek ownership and control of the Subject Property as a form of equitable relief. And, moreover, although the New Jersey court rejected the merits of Plaintiffs' defenses to foreclosure as "boilerplate" and insufficient to contest CTC's *prima facie* case to foreclose

(Stewart Decl., Ex. 11 at 4), it nevertheless noted that Plaintiffs may raise the very issues they cast as common-law claims here before the entry of final judgment in the Foreclosure Action.  In its November 18, 2024 order denying Plaintiffs' motion to vacate entry of default, the New Jersey court stated that,

> [m]oving forward, if [Plaintiffs] have a specific basis for disputing the amount due, [they] are still entitled to challenge the proof of amount due at the final judgment stage. ... [Plaintiffs] may file an objection to the amount due with the Office of Foreclosure, which will refer the foreclosure matter back to a General Equity judge, similar to the filing of a contesting answer.

(*Id.*).  Put another way, Plaintiffs may raise their allegations regarding Defendant's mismanagement of the Subject Property, failure to disburse funds, and manufacturing of Events of Default at the final judgment stage to challenge the amount due.  Indeed, when the New Jersey court noted this, it was aware of Plaintiffs' allegations about Defendant's mismanagement and manufacturing conditions of default because Plaintiffs raised these very issues in their July 8, 2024 brief in opposition to receivership (*see* Stewart Reply Decl., Ex. A at 1-2, 6-9), and in their September 23, 2024 brief in support of their motion to vacate entry of default (*see id.*, Ex. B at 4).

Second, and more broadly, both actions turn on the common issue of the propriety of the Foreclosure Action.  It is true that the precise claims Plaintiffs assert here have not been asserted in the Foreclosure Action.  But the issues in both actions are essentially the same.  In both actions, Plaintiffs maintain that Defendant mismanaged the Subject Property, withheld necessary funds, and manufactured Events of Default.  (*Compare* Compl. ¶¶ 4-9, 109, 111-119, 123,

130-140, 191-194, *with* Stewart Reply Decl., Ex. A at 1, *and id.*, Ex. B at 4).  In both actions, Defendant maintains that Plaintiffs defaulted on the Loan by breaching the terms of the Loan Agreements, permitting them to foreclose on the Subject Property and take other related actions.  (*Compare* Def. Br. 6-7, 12-14, *with* Stewart Decl., Ex. 7 (Foreclosure Action complaint)).  In this action, as in the Foreclosure Action, the Court is being asked to decide whether Defendant's conduct in bringing the Foreclosure Action was proper, and to determine whether any or all of the parties breached the terms of the Loan Documents.  In essence, then, "both actions turn on the validity of [the Lender]'s interest in the [p]roperty and the propriety of [the Lender]'s conduct in pursuing the Foreclosure Action."  *Sander*, 2023 WL 1866887, at *6; *see also Zulli*, 2025 WL 2482300, at *7 ("Both actions turn on the timeliness of the Foreclosure Action and the propriety of [the lender's] conduct in pursuing the Foreclosure Action").  Thus, the two actions are parallel.  *See Krondes II*, 789 F. App'x at 914; *E. Fordham DE LLC*, 804 F. App'x at 107; *Krondes I*, 2018 WL 2943774, at *3; *Tuebor Reit*, 2020 WL 4897137, at *5; *Windward Bora LLC*, 2020 WL 7042761, at *3-4; *Silberberg*, 2024 WL 36006, at *3.

### b.    The Six *Colorado River* Factors Favor Abstention

Turning to the six *Colorado River* factors, the Court begins by noting that abstention may be appropriate even when not all six factors favor it.  *See, e.g.*, *E. Fordham DE LLC*, 804 F. App'x at 107-08 (finding that the factors "make this matter an appropriate candidate for *Colorado River* abstention," even though

the second factor weighed against abstention).  Weighing the factors, the Court finds that five of six favor abstaining under *Colorado River*.

### i.    Jurisdiction over a *Res*

The first factor — whether the controversy involves a *res* over which one of the courts has assumed jurisdiction — weighs in favor of abstention.  "A foreclosure action is an *in rem* proceeding."  *FDIC* v. *Four Star Holding Co.*, 178 F.3d 97, 102 (2d Cir. 1999).  Defendant argues that the first factor is alone dispositive because the Foreclosure Action is an *in rem* proceeding over the same property at issue here.  (Def. Reply 2-3).  However, that would only be true if both the Foreclosure Action and this action were *in rem*.  *See Sander*, 2023 WL 1866887, at *5.  The instant action is not *in rem*.  Nevertheless, where, as here, the federal action is *in personam* and the state action is *in rem* regarding the same property, the first factor "strongly favors abstention."  *Id.* (quoting *Roy* v. *Bank of N.Y. Mellon*, No. 17 Civ. 6729 (MKB) (LB), 2018 WL 4771898, at *5 (E.D.N.Y. Sept. 30, 2018) (quoting *Krondes I*, 2018 WL 2943774, at *3)).  The New Jersey court has assumed jurisdiction over the Subject Property by appointing a rent receiver and enjoining Plaintiffs from exercising possession or control.  (Stewart Decl., Ex. 8 at 1-2).  As previously discussed, among other relief, Plaintiffs seek possession and control of the *res*, as well as a finding that the very filing of the Foreclosure Action was unlawful.  Accordingly, the first factor weighs in favor of abstention.

ii.        **Inconvenience to the Parties**

The second factor — whether the federal forum is less convenient than the state forum — is neutral, weighing against abstention.  The Loan Documents contemplate the possibility of a federal forum for disputes arising thereunder.  (*See* Stewart Decl., Ex. 2 § 10.3(b)).  Nevertheless, there is an ongoing action involving the same property and substantially the same parties in New Jersey.  The Court finds — as Plaintiffs concede (*see* Pl. Opp. 12) — that this factor is neutral.  "Because a neutral factor 'favors retention of the case in federal court,' this factor weighs against abstention."  *E. Fordham DE LLC*, 804 F. App'x at 108 (quoting *Niagara Mohawk*, 673 F.3d at 101).

iii.        **Avoiding Piecemeal Litigation**

The third factor — whether dismissing the federal action will avoid piecemeal litigation — weighs in favor of abstention.  "The predominant concern expressed in *Colorado River* and its progeny is the avoidance of piecemeal or purely duplicative litigation and the concomitant waste of judicial resources."  *Avara US Holdings LLC*, 2024 WL 709068, at *7 (quoting *Mouchantaf* v. *Int'l Modeling & Talent Ass'n*, 368 F. Supp. 2d 303, 307 (S.D.N.Y. 2005)).  "Piecemeal litigation also creates the possibility of 'contradictory findings of liability [that] would cause friction between state and federal courts.'"  *Id.* (quoting *De Cisneros* v. *Younger*, 871 F.2d 305, 308 (2d Cir. 1989)).  Indeed, the third factor "is considered a 'paramount consideration,'" because "a failure to abstain may result in 'inconsistent disposition[s]' which 'would breed additional litigation on assertions of claim and issue preclusion.'"

*Krondes I*, 2018 WL 2943774, at \*4 (alteration in original) (quoting *Arkwright-Bos. Mfrs. Mut. Ins. Co.* v. *City of New York*, 762 F.2d 205, 211 (2d Cir. 1985)).

As previously discussed, Plaintiffs seek, *inter alia*, possession and control of the Subject Property, and they seek findings that Defendant manufactured Events of Default and that FLO's nonperformance was excused. Such relief and findings would be inconsistent with what the New Jersey court has already decided. *See, e.g.*, *Zulli*, 2025 WL 2482300, at \*8 ("The third factor ... weighs in favor of abstention because [plaintiff] seeks to have this Court review and re-decide issues that he alleged as defenses in the state Foreclosure Action."). Moreover — as is especially important because the New Jersey court rejected Plaintiffs' defenses to foreclosure in their proposed answer — the New Jersey court may consider the same issues Plaintiffs raise in their Complaint prior to the entry of final judgment in the Foreclosure Action. (*See* Stewart Decl., Ex. 11 at 4). Here, there is a real risk of inconsistent dispositions and additional litigation on claim and issue preclusion. For many of the same reasons why the Court finds the actions to be parallel, it finds the possibility of piecemeal litigation to weigh in favor of abstention.

### iv.    Filing Order

The fourth factor — the filing order and whether the proceedings have advanced more in one action — clearly weighs in favor of abstention. The Foreclosure Action complaint was filed on June 3, 2024. (*See* Stewart Decl., Ex. 7). The instant action was originally filed in New York County Supreme Court on November 25, 2024. (*See* Compl.). More importantly, the Foreclosure

Action has made more progress.  *See Niagara Mohawk*, 673 F.3d at 102 ("[T]his prong of the *Colorado River* test turns not just on the sequence in which the cases were filed, but rather in terms of how much progress has been made in the two actions." (internal quotation marks omitted) (quoting *Village of Westfield* v. *Welch's*, 170 F.3d 116, 122 (2d Cir. 1999))).  The New Jersey court in the Foreclosure Action has already ordered the Subject Property into rent receivership, defaulted both FLO and Chetrit, and denied their motions to vacate entry of default and to reconsider the rent receivership.  (*See* Stewart Decl., Ex. 8-11; Stewart Reply Decl., Ex. A-C).

Plaintiffs maintain that the New Jersey court has made no progress on the merits of the claims asserted here, and "all that is left to determine in the Foreclosure Action is the deficiency judgment amount."  (Pl. Opp. 13 (citing Stewart Decl., Ex. 11)).  However, that is not an accurate characterization.  The New Jersey court rejected the factual allegations underlying Plaintiffs' lender-liability claims as non-meritorious defenses to foreclosure, while at the same time specifically noting that Plaintiffs were entitled to challenge the proof of amount due at the final judgment stage in a manner similar to the filing of a contesting answer.  (Stewart Decl., Ex. 11 at 4).  Thus, the New Jersey court has made plenty of progress on the claims in the Foreclosure Action, whereas this action is at the motion to dismiss stage, and no discovery has taken place.

### v.     Whether Federal Law Provides the Rule of Decision

The fifth factor — whether federal law provides the rule of decision — weighs in favor of abstention, too.  Plaintiffs bring only state-law claims.  (*See*

*generally* Compl.).  Nevertheless, "even 'the *absence* of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex.'"  *Niagara Mohawk*, 673 F.3d at 102 (quoting *Village of Westfield*, 170 F.3d at 123-24 (emphasis added)).

Plaintiffs believe this factor does not favor abstention because the state-law questions here do not involve novel or complex issues.  (Pl. Opp. 14).  That might or might not be true.  "However, while the 'absence of federal issues does not require the surrender of jurisdiction, it does favor abstention where "the bulk of the litigation would necessarily revolve around the state-law ... rights of [numerous] ... parties.""  *Iacovacci*, 437 F. Supp. 3d at 378 (quoting *Gen. Reinsurance Corp.*, 853 F.2d at 82 (alterations and omissions in original) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 23 n.29)).  This factor, then, weighs slightly in favor of abstention.

### vi.      Adequacy of State Procedures to Protect Plaintiff's Federal Rights

Lastly, the sixth factor — whether the state procedures are adequate to protect the plaintiff's federal rights — weighs in favor of abstention.  No federal rights are at issue in this action.  (*Cf.* Compl.).  But, with respect to the sixth factor, a court must nevertheless "determine whether 'the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'"  *Niagara Mohawk*, 673 F.3d at 103 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28).  Here, there is no reason to believe that the Foreclosure Action will not completely and promptly resolve the issues between the parties.  Again, as previously discussed, Plaintiffs have raised their

32

issues regarding the alleged mismanagement of the Subject Property and manufactured conditions of default, and can raise them before final judgment is entered in the Foreclosure Action (albeit not in the form of New York state-law claims).  Accordingly, this factor weighs in favor of abstention.

### c.    An Additional Factor Favors Abstention

"As an additional factor, the Supreme Court has 'found "considerable merit" in the idea "that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*."'"  *Abe*, 2016 WL 1275661, at *6 (quoting *Telesco* v. *Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 363 (2d Cir. 1985) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 17 n.20)).  "In this Circuit, 'a plaintiff who, having failed to obtain the desired relief in its home state forum of choice, brings a second proceeding in order to try again[,]' 'strongly indicate[s] the vexatious nature of the litigation.'"  *Avara US Holdings LLC*, 2024 WL 709068, at *8 (second alteration in original) (first quoting *Am. Disposal Servs., Inc.* v. *O'Brien*, 839 F.2d 84, 88 (2d Cir. 1988), and then quoting *Telesco*, 765 F.2d at 363).

In the Foreclosure Action, the New Jersey court noted that "the only meritorious defenses [to foreclosure] are challenges to the validity of the mortgage, the amount of indebtedness and default, and the right of the mortgagee to foreclose on the mortgaged property."  (Stewart Decl., Ex. 11 at 2 (internal quotation marks omitted)).  But Plaintiffs did not provide "a legitimate basis [for] contesting the validity or priority of the mortgage or [the Lender's]

right to foreclose it," beyond the "boilerplate defenses" in their proposed
answer.  (*Id.* at 4).

Plaintiffs brought this action one week after losing the motion to vacate
entry of default, following their initial failure to timely answer the complaint in
the Foreclosure Action.  Much like in *Avara US Holdings LLC*, where the district
court found that the additional factor of the vexatious or reactive nature of the
federal litigation counseled in favor of abstaining because "the plaintiff brought
this action only after it brought an action in Oklahoma *and lost a motion to
dismiss*," 2024 WL 709068, at *8 (emphasis added), the Court finds that the
additional factor weighs in favor of abstaining from hearing this action.  The
Court does not think it prudent to open a federal flank for parties who are
losing state-court foreclosure actions, such as Plaintiffs.

### d.    Assessment of the Factors

In light of the ongoing parallel Foreclosure Action, and considering that
five of the six *Colorado River* factors — plus one additional factor — weigh in
favor of abstention, the Court abstains from exercising jurisdiction over this
action.  "The decision whether to stay or dismiss a federal suit under the
*Colorado River* doctrine is committed to the discretion of the district court."
*Bethlehem Contracting Co.* v. *Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 (2d Cir.
1986) (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 19).  Dismissal rather
than a stay is warranted because the Court anticipates that no matter the
outcome of the Foreclosure Action, Plaintiffs will seek to re-litigate issues in
this action, risking inconsistent dispositions and raising the possibility of

additional litigation about issue and claim preclusion.  The Court dismisses the Complaint without prejudice.[3]

## CONCLUSION

For the above reasons, Defendant's motion to dismiss is GRANTED.  The Complaint is dismissed without prejudice.  The Clerk of Court is directed to terminate the pending motion at docket entry 12, and to enter judgment for Defendant.

Understanding that the Loan Documents contain a fee-shifting provision (Stewart Decl., Ex. 2 § 10.13), and that Defendant seeks leave to file a fee petition to recover attorneys' fees and costs (Def. Br. 23), the Court directs the parties to meet and confer and file a joint letter on or before **October 31, 2025**, indicating whether the parties have resolved this matter or, instead, whether they believe the filing of a fee petition to be necessary.

SO ORDERED.

Dated:    September 29, 2025
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

[3]    In a footnote in their opposition brief, Plaintiffs note that, "[i]n the event the Court dismisses any of the causes of action in the Complaint, Plaintiffs respectfully submit that they should be permitted leave to amend the Complaint." (Pl. Opp. 1 n.1).  The Court denies this request because no amendment would alter its decision to abstain from hearing Plaintiffs' claims under *Colorado River*.  *See, e.g.*, *Zulli* v. *JP Morgan Chase Bank*, No. 23 Civ. 3519 (JMA) (AYS), 2025 WL 2482300, at *12 (E.D.N.Y. Aug. 27, 2025).